Merrimack,
No. 4711.

### PUBLIC SERVICE COMPANY *v.* STATE.

Argued March 4, 1959.

Decided April 7, 1959.

*Sulloway, Hollis, Godfrey & Soden* and *Ian R. MacNeil* (*Mr. Hollis* and *Mr. MacNeil* orally), for the plaintiff.

*Louis C. Wyman,* Attorney General, *Warren E. Waters,* Deputy Attorney General and *Dort S. Bigg,* Law Assistant (*Mr. Waters* orally), for the defendant.

KENISON, C. J.   The plaintiff electric utility paid a franchise

tax to the State under protest which upon appeal was determined to be unlawfully levied under an unconstitutional statute. RSA ch. 83. *Public Service Co.* v. *State*, 101 N. H. 154. The amount of this tax was refunded by the State to the utility without interest, and the issue to be decided in this case is whether the State is liable for interest on a franchise tax refund.

Although the doctrine of sovereign immunity has been subjected to a barrage of cogent criticism from commentators over a long period of time, the doctrine still survives with considerable vitality except as modified by federal or state legislation. *Wiseman* v. *State*, 98 N. H. 393; *Moore* v. *Dailey*, 97 N. H. 278. See Third Report of N. H. Judicial Council, *p.* 40 (1950) and Fourth Report of N. H. Judicial Council, *p.* 34 (1952) which recommended legislation permitting judgments to be rendered against the State in actions founded on express and implied contracts enacted as RSA 491:8. In a survey of the doctrine of sovereign immunity in the states, New Hampshire was classified in the following manner: "Consistent adherence to the standard view that neither the state nor its subdivisions may be sued without legislative consent, and strict construction of legislative consents when given, characterize the New Hampshire law." Leflar & Kantrowitz, Tort Liability of the States, 29 N. Y. U. L. Rev. 1363, 1389 (1954). This characterization was accurate when made and has been reaffirmed in subsequent decisions. *Reconstruction &c. Corp.* v. *Faulkner*, 100 N. H. 192; *Opinion of the Justices*, 101 N. H. 546, and cases cited. While the doctrine of sovereign immunity plays only a peripheral part in this decision, it is material to the extent that it is recognized that the plaintiff can recover interest only if the Legislature has provided for it by statute, either expressly or by reasonable implication. *Manchester* v. *Guild*, 100 N. H. 507, 511; *Moore* v. *Dailey*, 97 N. H. 278. Consequently, the issue before us is primarily one of statutory construction.

RSA 83:13 provides that upon appeal if the taxpayer is entitled to reduction of the tax the State Treasurer "shall refund to the taxpayer the amount of any overpayment of the tax from any funds not otherwise appropriated." No provision is made in this chapter for the allowance of interest. However in RSA 83:10, allowing an appeal, the Superior Court is given authority to "make such orders or decisions concerning all matters involved in or collateral to the proceedings, as justice may require." It is claimed by the plaintiff utility that this statute is authority for the

allowance of interest. Reliance is placed on *Boston & Maine R. R.* v. *State*, 63 N. H. 571, and *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 336. The State places its reliance on *Kaemmerling* v. *State*, 81 N. H. 405, 406, where it is said that a taxpayer is entitled to interest on a refund on taxes wrongfully collected "only as the statute authorizes it." None of these cases involved the right to interest on a refund of franchise taxes and to ascertain the legislative intent it is necessary to examine the legislative history of RSA ch. 83.

The franchise tax was first enacted by Laws 1931, *c.* 124. It was introduced as House Bill No. 26 (Journal of the House 1931, *p.* 86) and in its original draft made no provision for interest in the event the tax was to be reduced. Approximately two months later it appeared in new draft with the specific provision that any reduction of the tax was to be credited against later taxes "with interest upon any sum actually paid thereon." The statute remained in this form in the enactment of the Revised Laws. R. L., *c.* 84, *s.* 13. A minor change was made by the reorganization act but it had no bearing on the question of interest. Laws 1950, *c.* 5, Part 8, *s.* 34. In 1953 (Laws 1953, *c.* 107) the provision as to interest was eliminated. RSA 83:13.

The utility argues that the provisions of RSA 83:10 which gives the Superior Court on appeal the right to make orders and decisions on all matters involved in or collateral to the proceedings "as justice may require" is legislative consent to the payment of interest on a tax refund. Neither *Boston & Maine R. R.* v. *State*, 63 N. H. 571, nor *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 336, placed reliance upon the statutory language now appearing in RSA 82:18 and RSA 83:10 cited by the utility. Both cases involved taxes upon property, not franchises; and the opinion in the earlier case quoted the express statutory requirement that the tax on railroads should be "in proportion to the taxation of other property in all the cities and towns of the state." Laws 1881, *c.* 53, *s.* 1. The State's argument is that *Kaemmerling* v. *State*, 81 N. H. 405, clearly indicates that it is necessary to closely examine the statute under which the refund is authorized in order to determine the legislative intent. The elimination of the provision for interest by the 1953 amendment (Laws 1953, *c.* 107) cannot be characterized as inadvertent or an attempt to eliminate a redundancy or an unnecessary provision in the franchise tax statute in order to make it conform to the language in other statutes. RSA 82:22.

The most logical explanation for the deletion of the provision permitting interest is that the Legislature was focusing its attention on this specific question and decided that it was not to be allowed.

The plaintiff has submitted several other reasons in support of the argument that this was not the legislative intention. We have considered but do not accept them in view of the legislative history of the franchise tax statute and in particular the elimination of the provision for interest in Laws 1953, c. 107.

If the applicable statutes had indicated that the court should apply a liberal interpretation in favor of the taxpayer and a strict construction against the State, a different result would be expected. However, it has been settled law in this jurisdiction for many years that the State is not to be subjected to costs and interest unless the statute provides for it expressly or by reasonable implication. *State* v. *Kinne,* 41 N. H. 238; *D'Amours* v. *Hills,* 96 N. H. 498. The extent to which the State should be immune from costs and interest is a legislative question and the court is not free to waive this immunity even though the taxpayer makes an equitable argument in his favor. See *Opinion of the Justices,* 101 N. H. 546. Any modification of the doctrine of state immunity from the payment of costs and interest must be indicated by some express statutory provision or must be reasonably implied from the statute itself. "It has been the consistent opinion of this court that such a change is for the Legislature to determine rather than being within the province of the court." *Manchester* v. *Guild,* 100 N. H. 507, 510. In the present case we think that the Legislature has not expressly or impliedly authorized the payment of interest on a franchise tax refund, and accordingly the plaintiff's claim therefor is denied.

*Judgment for the defendant.*

All concurred.