Merrimack,
No. 6105a.

STATE

*v.*

PETER SALVUCCI & SONS, INC.

July 29, 1971.

**260**

*Warren B. Rudman,* Attorney General, and *Alexander J. Kalinski,* special counsel ( *Mr. Kalinski* orally ), for the State of New Hampshire.

*Devine, Millimet, McDonough, Stahl & Branch* and *Robert A. Backus* ( *Mr. Backus* orally ) for the defendant.

KENISON, C.J. The sole question presented in this case is whether the superior court has jurisdiction under RSA 491:8 to add interest and costs to a verdict for breach of contract recovered against the State. It is a question of first impression in this court.

Peter Salvucci & Sons, Inc., was the successful bidder on two road building contracts entered into with the State of New Hampshire. During the course of the construction Salvucci informed the State that it was incurring extra expense because of the State's alleged failure to deliver certain free materials as provided by the contract. After unsuccessful negotiations, Salvucci made a formal demand on the State for relief, which was denied. On June 2, 1961, Salvucci brought suit on the construction contract pursuant to RSA 491:8.

Long delays preceded the trial of the case. Salvucci requested depositions of the State's key witnesses in October, 1961, but the depositions were not taken until the following year, pursuant to subpoena. One year after the depositions, noting that the case had been pending "for a long time," counsel for Salvucci sought to have it referred to a master. The State was not agreeable to this proposition. Although the trial was subsequently scheduled for June of 1964, the State successfully moved to continue the case on the grounds that its personnel were needed on job sites and upon the grounds that the depositions of Ralph and Peter Salvucci had not been taken. Ultimately, in March, 1966, at the suggestion of the clerk of court, the State agreed to trial before a master.

On March 31, 1967, after trial, the Master ( *Charles J. Flynn,* Esq. ) found for Salvucci and rendered a verdict of $111,114.41. The Court ( *Bownes,* J. ) then granted its motion for judgment on the verdict plus costs and interest from the date it made formal

demand for payment. The State appealed to this court, without arguing the issue of the allowance of interest and costs, and we affirmed. *Peter Salvucci & Sons, Inc.* v. *State*, 110 N.H. 136, 268 A.2d 899 ( 1970 ). A motion for rehearing was denied.

Subsequently, the state filed a petition for writ of certiorari alleging that through accident, mistake or misfortune, it had failed to raise and argue the issue of payment of interest and costs. Relying on the doctrine of sovereign immunity it argued that the superior court had no jurisdiction to award interest and costs because RSA 491:8 does not expressly or impliedly permit imposition of interest or costs. Noting that it is established law in New Hampshire that the State is not to be subjected to costs and interest unless it waives its immunity by statute, we granted the State's petition for a writ of certiorari to the superior court. *State* v. *Salvucci*, 110 N.H. 502, 272 A.2d 854 ( 1970 ).

We have had numerous recent occasions to consider the scope of the doctrine of sovereign immunity in this State. *Eastern Grain Co.* v. *Currier*, 98 N.H. 495, 103 A.2d 84 ( 1954 ); *Public Service Co.* v. *State*, 102 N.H. 54, 149 A.2d 874 ( 1959 ); *Holte* v. *Rondeau*, 105 N.H. 304, 199 A.2d 100 ( 1964 ); *Gossler* v. *Manchester*, 107 N.H. 310, 221 A.2d 242 ( 1966 ); *Krzysztalowski* v. *Fortin*, 108 N.H. 187, 230 A.2d 750 ( 1967 ). The doctrine remains a settled part of our present law, despite mounting criticism both from within the State and from without, *e.g.*, N.H. Judicial Council, Twelfth Report 12, 13 ( 1968 ); Cramton, Non-Statutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter, and Parties Defendant, 68 Mich. L. Rev. 389 ( 1970 ); Davis, Sovereign Immunity Must Go, 22 Ad. L. Rev. 383 ( 1970 ); Sherry, The Myth That The King Can Do No Wrong: A Comparative Study of the Sovereign Immunity Doctrine in the United States and New York Court of Claims, 22 Ad. L. Rev. 39 ( 1969 ). As applied to the question raised in this case, our precedents hold that the State is not deemed to have waived its immunity to interest or costs unless it does so expressly or " by implication of such reasonable clarity that the courts need not strain the words of the statute to reach a conclusion. " *E.g., Eastern Grain Co.* v. *Currier*, 98 N.H. 495, 496, 103 A.2d 84, 85 ( 1954 ); *Holte* v. *Rondeau*, 105 N.H. 304, 306-07, 199 A.2d 100, 102 ( 1964 ). Under this standard the question of the waiver of sovereign immunity in this case resolves itself into a question of statutory interpretation. *Krzysztalowski* v. *Fortin*, 108 N.H. 187, 230 A.2d 750 ( 1967 ).

The defendant argues first that RSA 491:8 does provide for the imposition of interest and costs as against the State either expressly or by reasonable implication.

RSA 491:8 under which this action was brought provides in relevant part: "*Actions Against State:* The superior court shall have jurisdiction to enter judgment against the State of New Hampshire founded upon any express or implied contract with the state . . . ." The statute itself affords no other guidance as to the scope of such jurisdiction except to state that the jurisdiction conferred includes any set-off, claim, or demand whatsoever on the part of the State against any plaintiff commencing an action under the section. *Id.* It is fundamental that in determining the intended scope of the "jurisdiction to enter judgment" the statute is not analyzed out of context, but with reference to other applicable statutes and to the general legislative history and intent. *State ex rel Fortin* v. *Harris*, 109 N.H. 394, 395, 253 A.2d 830 (1969); *O'Brien* v. *Manchester*, 84 N.H. 492, 495, 152 A. 720, 722 (1930).

At the time that RSA 491:8 was enacted, RSA 524:1 regulating the form of judgments, provided as follows: "Form. Interest. [I]n rendering judgments for the debt or damages found by verdict, report of an auditor or otherwise, interest *shall be added* from the time of such finding to the rendition of judgment." (Emphasis added). In 1963 this statute was amended with the result that interest was allowed from the date that suit was instituted. Laws 1963, ch. 293; RSA 524:1-b (supp.) *Hanchett* v. *Brezner Tanning Co.*, 107 N.H. 236, 241, 221 A.2d 246, 249 (1966); *Pepin* v. *Beaulieu*, 102 N.H. 84, 89, 151 A.2d 230, 235 (1959). Under RSA 524:1 (supp.) as it now stands interest is to be added in all cases at least from the date of the writ. After making special provisions for actions on debts or accounts stated in which liquidated damages are sought, RSA 524:1-b (supp.) provides, "*Interest from Date of Writ. In all other civil proceedings* . . . in which a verdict is rendered or a finding is made for pecuniary damages to any party . . . for any . . . type of loss for which damages are recognized, there *shall be added forthwith by the clerk of court to the amount of damages interest thereon* from the date of the writ . . . ." (Emphasis added).

In these statutes the term "judgment" is used in contrast to the term "damages" and includes the award of interest. Ordinarily, upon a verdict for damages and upon motion of a party, interest is to be awarded as a part of all judgments. RSA 524:1-c (supp.)

shows that costs are similarly included within the term "judg-ment." Thus, reading RSA 491:8 in conjunction with RSA 524:1 ( supp. ) indicates that superior court jurisdiction "to enter judg-ment against the state" in actions upon contracts includes the power to award interest and costs.

The issue in *Holte* v. *Rondeau,* 105 N.H. 304, 199 A.2d 100 ( 1964 ), is closely analogous to that raised in the present case and the decision there is instructive in determining the construction of RSA 491:8. That case raised the question whether interest and costs were recoverable against the State in actions brought under former RSA 110-A:77, subsequently repealed. The statute author-ized persons to sue for "damages" caused by a member of the National Guard acting pursuant to RSA ch. 110. It provided that "The superior court shall have jurisdiction to enter judgment against the state for the amount of the *damages* found to have been suffered . . . ." Laws 1957, ch. 147:1, repealed by Laws 1961, ch. 64:1. ( Emphasis added ). Relying on the specific phras-ing of that statute, and legislative history, we found no clear implication that the legislature intended to waive the state's im-munity from costs and interest. *Holte* v. *Rondeau, supra* at 306-07, 199 A.2d at 102. RSA 491:8, on the other hand, does not restrict the superior court's jurisdiction to the "entry of judgment for damages," but rather gives the court the power to "enter judgment against the state." The difference in wording and the choice of the legislature not to follow the restrictive wording in-volved in *Holte* v. *Rondeau supra* are significant.

In the legislative history there are other indications that RSA 491:8 should be read to allow interest and costs against the State. The judicial council, in recommending adoption of the statute, suggested that contracts with the State should be treated like any other contracts. "The contracts to which a state is a party stand no differently from other contracts, except that, if a controversy arises, the other party has no recourse to the courts." "No good reason appears why the state should not consent to the judicial determination of such claims." N.H. Judicial Council, Third Report 41 ( 1950 ). The following year, in recommending to the legislature that the waiver also apply to implied contracts, as the council had initially recommended, the council stated, "Without broad authority to render judgment, full justice cannot be done the parties in many actions for breach of contract." N.H. Judicial Council, Fourth Report 35 ( 1952 ).

In contrast to the liberal approach taken by the council toward the waiver of immunity with regard to actions on contract, the council was cautious in its approach to waiver of tort immunity. It stated that actions based on injuries caused by the negligence of officers, agents or employees of the State involve more than a " mere waiver of immunity, " and are more complex. N.H. Judicial Council, Third Report 42 ( 1950 ). Such considerations have also influenced this court in its decisions to apply the doctrine of sovereign immunity in tort actions. *See Holte* v. *Rondeau supra*, and *Gossler* v. *Manchester*, 107 N.H. 310, 221 A.2d 242 ( 1966 ). However, as the reports of the judicial council recognize, these problems are not involved in contract cases. *See also* Sherry, The Myth That the King Can Do No Wrong: A Comparative Study of the Sovereign Immunity Doctrine in the United States and New York Court of Claims, 22 Ad. L. Rev. 39, 57-58 ( 1969 ); N.H. Judicial Council, Twelfth Report 12 ( 1968 ). This more liberal attitude toward the waiver of immunity from actions on contract may explain the broad language used by the council and the legislature in RSA 491:8 to waive sovereign immunity from suits on express or implied contracts with the State.

We have noted before that " The allowance of interest in this jurisdiction from the date of injury or loss is neither new or novel. It has long been recognized that injustice results if interest . . . cannot be allowed from the date of the injury . . . . " *Pepin* v. *Beaulieu*, 102 N.H. 84, 90, 151 A.2d 230, 235 ( 1959 ). Such a conclusion is particularly compelling in a case such as this in which the nature and size of the case makes scheduling of trial difficult and postponement of recovery likely. Nearly six years passed between the time the action was filed and the verdict in superior court.

We conclude that construing RSA 491:8 in light of its specific phrasing and its legislative history, it authorizes superior court jurisdiction to render full judgment against the State in contract cases including the award of interest and costs.

In the second portion of his argument counsel for Salvucci marshalls the numerous authorities criticising the doctrine of sovereign immunity and municipal immunity and cites the dicta of this court recognizing the injustices caused by application of the doctrine. *See Public Service Co.* v. *State,* 102 N.H. 54, 149 A.2d 874 ( 1959 ); *Krzysztalowski* v. *Fortin*, 108 N.H. 187, 230 A.2d 750 ( 1967 ). *See also* concurring and dissenting opinions in *Gossler* v. *Manchester*, 107 N.H. 310, 221 A.2d 242 ( 1966 ); and

*Stott* v. *Manchester*, 109 N.H. 59, 62, 242 A.2d 58, 60 ( 1968 ); Note, Assault on the Citadel: De-Immunizing Municipal Corporations, 4 Suffolk U.L. Rev. 832, 867 ( 1970 ); Comment, Liability of a State for Interest on a Judgment, 74 Dickinson L. Rev. 150, 152 ( 1950 ). He urges this court to change the standard of legislative construction it has employed in cases such as this, and argues that when the legislature consents to suit that it should be deemed to have waived immunity with respect to interest and costs as well, unless it expressly or by reasonable implication states to the contrary. Although there is much to be said in favor of such a proposal, our holding that interest and costs are allowable against the State under RSA 491:8 under the present standard renders it unnecessary for us to consider these arguments.

*Former judgment for Salvucci affirmed.*

All concurred.